## EDWARD S. WILSON
### v.
## JOHN P. HIGGINS.

EVIDENCE—BURDEN OF PROOF.—It is a fundamental rule in judicial determinations, that to enable a plaintiff to recover, he must support his alleged cause of action by a preponderance of testimony.

APPEAL from the Circuit Court of Richland county; the Hon. JOHN H. HALLEY, Judge, presiding.

Messrs. WILSON & HUTCHINSON, for appellant.

TANNER, P. J. This cause was tried on appeal from a justice of the peace. The facts were submitted to a jury, and verdict returned in favor of the appellee. A motion for a new trial was made, overruled, and judgment rendered on the verdict. The appellant excepted to the rulings of the court, and brings the case to this court by appeal, and alleges for error the refusal to grant a new trial.

We think the error well assigned. It is a fundamental rule in judicial determinations that to enable the plaintiff to recover, he must support his alleged cause of action by a preponderance of testimony. The appellee has not done so in this case. The testimony is brief, and we give it entire as it appears in the bill of exceptions:

Plaintiff testifies: " I was in court house; defendant called me out and asked me if I would sell him a wagon; I agreed to let him have a wagon; he wanted to get one on account of John W. Brothers; I agreed to let him have one—he to give me a note on Brothers; I was up here (Olney) and saw Wilson soon after, and told him the wagons were on the road. When they came I was putting them together, and Richard Rowland came after a wagon for Wilson; I asked him if he had Brothers' note; he said he knew nothing about any note; Rowland said Wilson was not at home; I then told him to take the wagon home and keep it till Saturday—merely as a loan—by which

time I would see Wilson, and if he did not get Brothers' note he could return the wagon; I afterwards named the matter to Wilson. When I sold the wagon Brothers was in Illinois; he afterwards moved to Indiana; and Wilson agreed to go down with me and help me make the money out of him; I asked him to do so once or twice, but he never did so; Brothers has since died; I then asked Wilson about paying for the wagon; he said he owed me nothing—that my debt was due from Brothers; I then sued him for the wagon; it was worth $100."

Sabins Blair testified: "I was helping Higgins put up some wagons. Richard Rowland came there and wanted a wagon. Higgins refused; Rowland said he must have it. Higgins then said he would lend it to him till Saturday, when he would see Wilson about it. Then Rowland took the wagon. He was working for Wilson. The wagon was worth $100 cash." Plaintiff rested.

E. A. Wilson, defendant, testified: "I got a wagon from Higgins; it's a long time since. We, Wilson & Hutchinson, were litigating for John W. Brothers, and he owed our firm largely. We asked him for pay. He had no money, but said "he had a deal with John P. Higgins, the plaintiff, and that if we could use a wagon and would give him credit for $100, he would make arrangements with Higgins by which we should get a wagon. We consented, and he afterwards came to our office and said he had made the arrangements with Higgins, and it was all right. I saw Higgins shortly afterwards, and told him Brothers owed Wilson & Hutchinson, and had agreed to see him, and arrange to get a wagon of him, which he (Higgins) was to charge to Brothers, and for which we, Wilson & Hutchinson, were to give Brothers credit for $100. Higgins said Brothers had seen him, and that it was all right; that he had a car-load of wagons on the road, and when they came we should send and get one. When they came I sent Rowland with my team to get a wagon. He got it. There was no arrangement by which we were to get Brothers' note. Brothers said he would arrange with Higgins for the wagon. Higgins said Brothers had made the arrangement, and we got the wagon, and

gave Brothers credit for it. Don't know what the arrangement between Higgins and Brothers was. We never agreed, and I never agreed to get Brothers' note. Higgins never spoke to me about it for more than two years. When we got this wagon and gave Brothers credit for it, Brothers was good. Two years (or more) after that Brothers had failed, and after his failure, Higgins came to me and said Brothers had not paid him for the wagon, and he thought I ought to pay. I told him I had nothing to do with the matter; that credit had been given Brothers on the firm books for the wagon, and that I had settled with my partner for his half of it, and it was his carelessness if he had lost it. Still later he came to me again and said Brothers had property in Indiana, but it was so covered up with mortgages that he was afraid to attempt to make it. I told him I would go over with him to try to help him find a levy any time he wanted o go, but he never came, and I never heard any more of it till I was sued. " I did not buy the wagon of Hi gins individually. It was got by the firm on Brothers' account, and this Higgins understood at the time." " We never had Brothers' note, and there never was any understanding that we should get it for Higgins. Rowland was not my agent for any purpose, nor authorized to make any contract for me with Higgins; nor did he notify me that Higgins had sent the wagon as a loan, or demanded any note, and I afterward saw Higgins, I presume once a week, to the time he first mentioned the wagon to me, which was two yea s or more afterwards."

T. W. Hutchinson testified: " Wilson, the defendant, and myself, bought this wagon of John W. Brothers, and paid him for it by giving him credit as agreed upon. He was to get the wagon of plaintiff on a private dealing between them, the nature of which they never explained to me. We first made the bargain with Brothers. Then Wilson told plaintiff what the understanding was, and he consented to it, and promised to furnish us the wagon when his next car-load arrived, which he said was on the way. We never agreed to get Mr. Brothers' note for Mr. Higgins, nor did he ask us to do so. We did not need the wagon—should not have thought of buying it, but as it was offered us on a debt, we accepted it at $100, and I

discounted my half of it to Mr. Wilson, giving him $10 off, and he paid me $40 for my half."

On cross-examination witness said: " This was five or six years ago; did not remember fully all the circumstances, but was sure the bargain between Brothers and Wilson & Hutchinson was fairly and fully stated to Higgins, and that Higgins agreed to it. The talk was between Wilson & Higgins in witness' presence. Never heard of this claim by Higgins for two or three years after the wagon was got and its value divided. I never authorized Rowland nor any one else to change the bargain under which we were to get the wagon, and never till to-day heard of any claim that he did so."

The appellee is unsupported in his statement that the wagon was to be paid for in a note to be given by Brothers to him, which appellant was to procure and deliver. But appellant is fully corroborated by Hutchinson in his statement of the contract, from which it clearly appears that the wagon was sold to the appellant and T. W. Hutchinson by Brothers, and was delivered in pursuance of an arrangement made by him with the appellee.

It may have been the intention of the appellee at the time he delivered the wagon, to abandon his contract with Brothers, and hold appellant liable, but before he could do so he would have to apprise appellant of the fact, either before the delivery of the wagon, or within a reasonable time thereafter. If delivered to appellant through his agent Rowland, merely as a loan, and not on the contract, it was the duty of appellee to bring this fact to the knowledge of appellant. According to his own statement, he took upon himself the duty of informing appellant that the wagon was a loan. He says: "I told him (Rowland) to take the wagon home and keep it until Saturday, merely as a loan, by which time I would see Wilson." The only expression used by appellee in his testimony, from which even an inference can be drawn that he ever informed the appellant that the wagon was not delivered on the contract with Brothers, is that "I afterwards named the matter to Wilson." But precisely when or what matter he named to appellant we are left to conjecture.

The appellant states that he was never informed by Rowland or the appellee that the wagon was delivered as a loan, but that about two years after he got the wagon, and after Brothers had become insolvent, the appellee informed him that Brothers had never paid for the wagon. This statement is not denied by the appellee. If the appellee did not deliver the wagon on the contract with Brothers, but merely as a loan, we are at a loss for a reasonable interpretation of this language: "When I sold Wilson the wagon, Brothers was in Illinois; afterwards he moved to Indiana, and Wilson agreed to go down with me and help me make the money out of him; I asked him to do so once or twice." If he sold the wagon to Wilson, why seek to make the money out of Brothers, who was a non-resident, and in nowise indebted to him?

We are satisfied that the verdict of the jury was palpably against the evidence, and should have been set aside and a new trial awarded. The judgment of the Circuit Court is reversed, and the cause remanded.

Reversed.